IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37055-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDUARDO S. MARTINEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| JOHN GARY METRO, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, C.J. — Attorney Gary Metro appeals a court order imposing contempt

sanctions for violation of a pretrial order. He also claims the trial court abused its

discretion by declaring a mistrial based on the violation. We affirm.

FACTS

Gary Metro's client, Eduardo Martinez, was charged with two counts of first

degree rape of a child. His brother Alejandro Martinez was a codefendant. The charges

stemmed from incidents dating back to 1995 and 1996. Resolution of the prosecution

was delayed for approximately 25 years due to violations of pretrial release.

The State's first two attempts to adjudicate the charges against Eduardo Martinez

resulted in mistrials. During the course of the trial process, the court issued a pretrial

ruling, prohibiting admission of either brother's good character or lack of prior criminal

convictions. Mr. Metro was aware of this pretrial ruling and its applicability to his client's

case.

At the time of the third trial against Eduardo Martinez, Mr. Metro gave an opening

statement. The statement, recounted in the order on sanctions, included the following:

> And [Eduardo Martinez] went back with his mother to Connecticut
> when he was 15 or 16 or 17. . . . And he came back here. . . . And he
> decided to go back to Connecticut. . . .
> And so years go by. ***And there's no indication that Eduardo did
> anything but*** work, ***obey the law***, play with his kids, raise a family, give
> credits as best he could to his community. . . .
> And 25 years had gone by. And no policemen went from Bridgeport,
> Connecticut, to try to find Eduardo or Alejandro. No police officer tried to
> find these allegedly really dangerous men that could be passing disease[2][1]
> throughout our society. Whatever their motive was to do this – they've not
> really told us. If their motive was to have sex with children, ***they surely***

---

[1] The original footnote from the order on sanctions reads: "Counsel, without
objection by any party, referenced the AIDS [acquired immunodeficiency syndrome]
crisis during the charge period in jury selection." Clerk's Papers at 58 n.2; *see also*
3 Report of Proceedings (Aug. 28, 2019) at 525 (asking if prospective jurors remembered
the AIDS crisis).

> ***don't seem to believe that motive***. Or I would hope they would have been very much more active.
>
> So what's their motive?
>
> They don't find Alex. ***They don't find Eduardo being picked up on kidnapping children or having child pornography or anything of the sort.*** They find Eduardo for one reason: Somebody else rear-ended him.

Clerk's Papers at 58; *see also* 3 Report of Proceedings (RP) (Aug. 28, 2019) at 569-71. No one objected.

The trial court addressed Mr. Metro's argument during a conference with counsel after the opening statements were completed. The court expressed concern that Mr. Metro's arguments violated its pretrial ruling. The court asked counsel to submit briefing on whether there had been a violation and, if so, the applicable remedies.

The State contended in its briefing that Mr. Metro violated the pretrial ruling, requested a general curative instruction, and suggested punitive sanctions against Mr. Metro. Alejandro Martinez's attorney claimed Mr. Metro did not violate the order, but requested a mistrial if the trial court disagreed, pointing out his client would be prejudiced if the jury expected to receive good character evidence. Mr. Metro stated he had not intentionally violated the court's order and was only trying to humanize his client. Mr. Metro did not address the applicable remedy, should the court find he violated its order. At the subsequent hearing on the issue, Mr. Metro stated, "whatever you decide, I'm okay with." 3 RP (Aug. 29, 2019) at 609.

The trial court concluded Mr. Metro's statements violated its pretrial order and that the prejudice to Alejandro Martinez was incurable. The court then declared a mistrial as to all defendants. Mr. Metro did not object.

The trial court subsequently issued an order finding Mr. Metro "knew or should have known" the comments made in the opening statement violated the court's pretrial order. CP at 61-62. The court "regretfully" concluded Mr. Metro's conduct was "at least tantamount to bad faith." *Id*. at 62. The court highlighted the waste and delay caused by having to declare a third mistrial. It employed its inherent authority to impose monetary sanctions against Mr. Metro for his bad faith "to act as a sufficient deterrent to future similar behavior." *Id*. at 64.

Mr. Metro appeals.

ANALYSIS

*Sanctions*

Mr. Metro contends the trial court punitively sanctioned him for contempt in violation of due process. Specifically, Mr. Metro claims the court was prohibited from imposing punitive contempt sanctions because the proceedings were not initiated by the filing of a complaint or information. *See, e.g.*, RCW 7.21.040(2)(a) ("An action to impose a punitive sanction for contempt of court shall be commenced by a complaint or

information."). We review Mr. Metro's due process claims de novo. *State v. Mullen*, 171 Wn.2d 881, 893-94, 259 P.3d 158 (2011).

Violation of a court order constitutes contempt. RCW 7.21.010(1)(b). When contempt occurs in the presence of the court, prior notice in the form of a criminal complaint is unnecessary. RCW 7.21.040(1), .050(1). Instead, the court may adjudicate the matter summarily. RCW 7.21.050(1). Summary contempt allows for the immediate issuance of sanctions "and the contemnor is entitled only to speak in mitigation." *Sanchez v. Rose*, 12 Wn. App. 2d 670, 674, 459 P.3d 336 (2020). Summary contempt sanctions may be either "remedial or punitive." RCW 7.21.050(1). Constitutional due process protections do not bar courts from imposing summary contempt sanctions. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 n.2, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *In re Contempt of Court of Willis*, 94 Wash. 180, 185, 162 P. 38 (1917).

Mr. Metro does not contest the fact that he committed a direct act of contempt in the presence of the court. As such, the court was entitled to invoke summary contempt without the need for a complaint or information. Mr. Metro does not argue the trial court lacked a factual basis to find contempt or the court failed to make adequate findings to

allow it to deviate from statutory summary contempt procedures.[2] Thus, we lack any

further basis to review Mr. Metro's challenge. The contempt order is affirmed.

*Mistrial*

Mr. Metro contends the trial court improperly declared a mistrial because the

improper portions of his opening statement did not cause any appreciable prejudice.

Mr. Metro did not designate the mistrial order in his notice of appeal. *See* RAP 2.4(a)

("The appellate court will . . . review the decision or parts of the decision designated in

the notice of appeal."). And he does not appear to argue that the mistrial order

prejudicially impacted the trial court's imposition of contempt sanctions. *See* RAP 2.4(b)

("The appellate court will review a trial court order or ruling not designated in the notice

. . . if . . . the order or ruling prejudicially affects the decision designated in the notice.").

---

[2] By statute, punitive sanctions for summary contempt are limited to $500 or 30 days' imprisonment per violation. RCW 7.21.050(2). In addition, statutory summary contempt sanctions are to be imposed "immediately" or "at the end of the proceeding." RCW 7.21.050(1). However, trial courts are not limited to statutory procedures or remedies if found inadequate. *In re Dependency of A.K.*, 162 Wn.2d 632, 647, 174 P.3d 11 (2007). Here, the trial court imposed over $3,000 in punitive sanctions one week after Mr. Metro's contemptuous conduct. Mr. Metro does not argue this violated the summary contempt statute or that the trial court failed to make findings regarding the adequacy of statutory remedies.

No. 37055-1-III
*State v. Martinez*

We therefore decline to review this matter further. *See State v. Donaghe*, 172 Wn.2d 253, 263 n.11, 256 P.3d 1171 (2011) (court may decline to reach issue that has been inadequately briefed).

CONCLUSION

The order on sanctions is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.

7